# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

PIA BEATY                                                )
                                                         )
                    Plaintiff,                           )
                                                         )           2:12-CV-01807-RCJ-NJK
          vs.                                            )
                                                         )                **ORDER**
                                                         )
SANTA ROSA III, HOA; DOES 1-100,                         )
                                                         )
                    Defendants.                          )
                                                         )
                                                         )
_____

      This case arises out of an HOA unit owner's dissatisfaction with the location of her unit. The Court granted Defendant's Motion to Dismiss and closed the case on April 25, 2013. Defendant has now moved for attorneys' fees and costs (ECF No. 46), and Plaintiff has filed five additional motions (ECF Nos. 42, 43, 45, 56, 60, and 67), which the Court will construe as motions to reconsider. For the reasons stated herein, the Motion for Attorneys' Fees and Costs is granted in part, and the remaining motions are denied.

## I.    FACTS AND PROCEDURAL HISTORY

      All of Plaintiff's claims stem from a common nucleus of facts. On October 14, 2009, Pro se Plaintiff Pia Beaty purchased a unit within the Santa Rosa III Homeowners Association (the "Defendant" or "Association") sight unseen, completing the purchase via telephone, internet, and mail. She is now dissatisfied with her purchase because the park on the other side of her perimeter wall is not part of the Association. (Compl., Oct. 15, 2012, ECF No. 1). She also complains that her exterior hot tub area can be seen from the park, that there is damage to the perimeter wall caused by a tree planted in the park, that she has no easement over the park, and that her lot adjoins non-development property in general. (*Id.*).

Having failed to exercise any more due diligence than that afforded by a Google Maps search, Plaintiff sued Defendant in this Court, pursuant to 42 U.S.C. §1983, alleging that Defendant acted under the color of state law to violate her civil rights. She also asserted claims for misrepresentation in violation of state law, alleging that the Association's CCRs did not inform her that the park was not part of the Association. (*Id.*). On November 9, 2012, the Association filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and (6). (Mot. to Dismiss, ECF No. 8). The entirety of Defendant's nineteen-page motion addressed Plaintiff's meritless federal claims and the lack of subject matter jurisdiction over the pendent state law claims. (*Id.*).

On November 13, 2012, Plaintiff responded with an "Objection to Defendant's Motion to Dismiss" and an offensive Motion for Summary Judgment, running a total of eighty-six pages, in which she alleged, for the first time, that Defendant was a "state actor." (Objection, ECF No. 13). She also asserted new claims, which appear to allege Truth in Lending Act violations, improper use of assessments, and violations of due process and equal protection. (*Id.*). In response, Defendant submitted a twenty-one-page reply brief, nineteen pages of which addressed the federal claims. (ECF No. 16).

On December 6, 2012, Plaintiff filed a "Response to Objections," which ran an astounding 332 pages, including exhibits. (ECF No. 18). In this filing, Plaintiff again raised allegations of new violations, including: (1) a "duty to disclose" the results of an insurance claim that she herself initiated directly with Defendant's insurance carrier; (2) Defendant's alleged abandonment of a separate common-interest community, Rancho Mirage Unit 2, which Plaintiff now alleges is "also involved in the Joint State Action"; (3) a claim that Centex, the developer, provided "false and misleading information" regarding a different entity, Rancho Mirage, in a

year that pre-dates the creation of the Association; (4) that Defendants somehow "bamboozled" a county employee into reverting the deed for the park to an insolvent company; and (5) that Defendants have no crime insurance. (*Id.* at 4–7; 8–15; 16–18; 33–34).

On December 25, 2012, before either party had engaged in discovery, Plaintiff filed the first of her two motions *in limine*, seeking an order that would, among other things, exclude admissible evidence and protect her from depositions and interrogatories related to her federal claims. (ECF No. 21, at 2–6). She then attempted to assert additional, largely unintelligible claims. (*Id.* at 19–21). Defendant filed a six-page opposition, addressing these frivolous, unrelated, and premature arguments.

On February 7, 2013, Plaintiff filed her second motion *in liminie*, seeking, among other things, an order disqualifying Defendant's counsel for alleged ethical conflicts somehow related to insurance fraud. (ECF No. 23). This motion is supported by nearly fifty pages of unrelated litigation excerpts, but no applicable statute or case law. (*Id.*). Plaintiff also sought an extension of time to file an amended complaint, alleging that Defendants had withheld the content of certain emails from her, and that she was enrolled in a computer forensics course that would "make her proficient in using the Forensics Software utilized by the Federal Government to extract deleted and or missing email and other communications and files that the defendants may be withholding . . . from the defendant's computer system." (*Id. at* 2). The motion also implies, without any factual basis, that counsel for Defendant, Leach Johnson Song & Gruchow ("LJSG"), among other parties, participated in various fraudulent and otherwise unlawful activities. (*See generally id.*). On February 21, 2013, Defendant filed a fourteen-page opposition and motion to strike, arguing that the second motion *in liminie* was simply unreasonable and unrelated to the claims alleged in the complaint. (ECF No. 25).

On February 24, 2013, Plaintiff filed a "Counter Motion 'Not' to Strike," again making new allegations not included in her complaint, against parties not named as defendants, and raising "federal questions" concerning the Fair Debt Collections Practices Act and the "practice of selecting general counsel and insurance defense counsel." Continuing her effort to disqualify LJSG as defense counsel, and without any intelligible factual support, she also made and repeated allegations of various ethical violations. (Mot. Not to Strike, ECF No. 27, at 4; 8–14; 16; 17–19; 20–24; 27–28).

On April 1, 2013, Plaintiff filed a "Response to Defendant's Last Reply," running forty pages, which again asserted new claims against nonparties. These include allegations of mail fraud and deceptive trade practices against the Association's management company and collection agent. Specifically, the response avers that the Association discriminated against Plaintiff by "employing a company that fixes the books." This allegation is apparently based on the fact that the Association's "books" always report the same amount for the total monthly assessment, even though Plaintiff has deliberately missed payments in order to see if the Association would report fewer payments. (Resp. to Reply, ECF No. 31, at 1–17; 24–35; 36–40).

Without any apparent justification, Plaintiff refused to provide her Rule 26 initial disclosures on January 2, 2013, as required by the Court's scheduling order,  (Order, ECF No. 20). On April 10, 2013, Defendant filed motion to compel, which also sought sanctions in the form of attorneys' fees in the amount of $1,000.00 for the cost of preparing the motion. (ECF No. 32). Instead of providing any initial disclosures, Plaintiff responded on April 13, 2013 with a "Sanctions Counter Motion," again asking the Court  to remove Defendant's counsel and making new allegations, none of which have any bearing on her original claims. (ECF No. 33). Plaintiff also sought sanctions against LJSG for allegedly attempting to escalate its fees; acting

collusively with the Association's general counsel to improperly access Association funds; improperly influencing managers and board members; intimidating and harassing Plaintiff; and causing her to fear for her physical safety, because "in light of all the HOA corruption, persons are . . . mysteriously getting beat up." (*Id.* at 4–6; 7–8; 9–10; 11–12; 15–17). Plaintiff then argued that LJSG and its attorneys should be held "in contempt for improperly handling evidence and harassment." (*Id.* at 20). Defendant filed an opposition on April 25, 2013. (ECF No. 37).

On the same day, this Court entered a Judgment and an Order granting Defendant's motion to dismiss for lack of subject matter jurisdiction. Specifically, the Court found that except for Plaintiff's § 1983 claims, which it dismissed as "plainly not viable," all of the claims asserted in the complaint were state law claims. Therefore, left with only state law claims and parties lacking diversity of citizenship, the Court concluded that it lacked subject matter jurisdiction and dismissed the case. (ECF No. 38).

Since the Court's Order dismissing the case, Plaintiff has filed five additional motions, each of which is brightly colored, illustrated with unrelated graphics, and largely unintelligible. These included: (1) a "Motion for Reconsideration/Recusal of Judge for Decisions," which alleges that LJSG has committed fraud on the Court, contends that this Court somehow "cheated" Plaintiff out of a fair decision, and challenges the validity of this Court's orders, (ECF No. 42)[1]; (2) A subtly amended version of the aforementioned motion, (ECF No. 43); (3) a

---

[1] In her reply brief, Plaintiff makes additional claims to this effect. Among several other allegations, she asserts: (1) that "the Judge has continuously allowed the Leach firm to violate . . . . Court Orders . . . [use] unethical tactics, [and] encourage[] third parties to use legal and financial intimidation"; (2) that "the Judge has allowed his . . . staff to tilt the scale of justice in the favor of the Leach Firm; (3) that "the Judge has a fiduciary obligation to inspect the Record in this case and his failure to do so has caused Further Legal Injuries to Ms. Beaty; and (4) that "for the sakes [sic] of fair dealing, the judge should recluse [sic] himself from this matter. If everything is on the 'up and up' a 'Different Judge' will reach the same conclusions." (ECF No. 49, at 2).

"Motion for Stay or Restraining Order Re: Bruce Flammey Letters," which pertains to the Association's collection actions with respect to Plaintiff's past due assessments—another claim not asserted in her complaint, (ECF No. 45); (4) a Motion to Disqualify Counsel, which again makes baseless allegations of impropriety against parties and nonparties alike and contends that LJSG lacks "Article III Standing" to represent Defendant, (ECF No. 56); and (5) a motion to prevent Defendant from hiring an additional attorney, (ECF No. 60). In contrast, Defendant has moved for an award of attorneys' fees and costs, claiming a total amount of $37,347.86. (ECF No. 46, at 5). Importantly, Defendant has not requested fees for its defense against the motions filed subsequent to the motion for fees and costs.

Plaintiff has responded, contending only that the motion for fees is premature because she has a pending appeal. (Opp'n, May 9, 2013, ECF No. 47). This is incorrect, and Plaintiff knows it; she voluntarily withdrew her appeal, by motion, on May 3, 2013, six days before she filed the instant response. (Case No. 13-15838, May 3, 2013, Dkt. No. 3). The Court now considers the pending motions.

## II.    LEGAL STANDARDS

"Unless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Rule 54 does not provide for attorneys' fees directly but governs applications for fees under other statutes or rules that provide for them. *See* Fed. R. Civ. P. 54(d)(2)(B)(ii). Local Rules 54-1 and 54-16 contain procedural and evidentiary requirements for fee awards.

## III.    ANALYSIS

Defendant contends that it is entitled to an award of fees and costs pursuant to 42 U.S.C. § 1988, NRS 116.4117, and the Declaration of Covenants, Conditions, and Restrictions for Santa

Rosa III (the "Declaration"). The Court finds that Defendant is entitled to such an award, in a reasonable amount, under § 1988 or, in the alternative, under Federal Rule of Civil Procedure 11. Therefore, it need not reach the questions of state law.

       **a.   42 U.S.C. § 1988**

Section 1988 of the Civil Rights Act, provides that a prevailing defendant should not routinely be awarded attorneys' fees and costs simply because he has succeeded, but rather only where "the action is found to be unreasonable, frivolous, meritless, or vexatious." *Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978); *Vernon v. City of Los Angeles*, 27 F.3d 1385, 1402 (9th Cir. 1994) (internal citations omitted ). An action is considered frivolous in the Ninth Circuit when the result is obvious or the Plaintiff's arguments are wholly without merit. *Vernon*, 27 F.3d at 1402. This standard is "stringent," *Hughes v. Rowe*, 449 U.S. 5, 14 (1980), and the Ninth Circuit has repeatedly recognized that attorney's fees in civil rights cases "should only be awarded to a defendant in exceptional circumstances." *Saman v. Robbins*, 173 F.3d 1150, 1157 (9th Cir. 1999) (quoting *Barry v. Fowler*, 902 F.2d 770, 773 (9th Cir. 1990)); *see also Herb Hallman Chevrolet, Inc. v. Nash–Holmes*, 169 F.3d 636, 645 (9th Cir. 1999); *Brooks v. Cook*, 938 F.2d 1048, 1055 (9th Cir. 1991). The vigorous nature of this standard reflects Congress' policy of promoting fervent prosecutions of civil rights violations. *See Hughes*, 449 U.S. at 14–15. Thus, under § 1988, attorneys' fees should be awarded to a prevailing defendant only when doing so would not unduly chill civil rights litigation.

These standards are applied with particular vigor when the plaintiff proceeds pro se. *See, e.g.*, *Miller*, 827 F.2d at 620; *Brandon v. NWO, Inc.*, No. CV-07-00334-SPK-KSC, 2008 WL 2437736 (D. Haw. June 17, 2008); *Page v. Jefferson Transit Authority*, No. Co8-5456-RJB, 2009 WL 2884754 (W.D. Wash. Sept. 8, 2009). The heightened standard reflects the fact that "pro se

plaintiffs cannot simply be assumed to have the same ability as a plaintiff represented by counsel to recognize the objective merit (or lack of merit) of a claim." *Miller*, 827 F.2d at 620 (citing *Hughes*, 449 U.S. at 15).

The Ninth Circuit has provided three additional factors to consider when deciding whether attorneys' fees should be levied upon a non-prevailing pro se plaintiff pursuant to § 1988: (1) whether the court was able to conclude that the action should be dismissed prior to trial; (2) whether the plaintiff was able to recognize the merits of her claim; and (3) whether the plaintiff acted in bad faith. *Miller*, 827 F.2d at 620. When a complaint raises federal and pendent state law claims that are "factually or legally related, they should be treated as one action for purposes of § 1988 fee awards." *McAnally v. Clark Cnty.*, No. 2:04-CV-01220-LRH-LRL, 2006 WL 240896, at *1 (D. Nev. Jan. 27, 2006) (citing *Munson v. Milwaukee Bd. of Sch. Directors*, 969 F.2d 266, 272 (7th Cir. 1992)).

Where, as here, a claim is dismissed for lack of subject matter jurisdiction, the general rule is that the defendant is not a prevailing party within the meaning of  § 1988 and the district court lacks jurisdiction to award attorneys' fees. *Elwood v. Drescher*, 456 F.3d 943, 948 (9th Cir. 2006). However, under § 1988 "there are some circumstances in which attorney's fees or costs may be imposed even where the court proves to be without subject matter jurisdiction." *In re Knight*, 207 F.3d 1115, 1117 (9th Cir. 2000) (quoting *Branson v. Nott*, 62 F.3d 287, 293 n. 10 (9th Cir. 1995)) (internal quotation marks omitted). Where, as here, Federal Rule of Civil Procedure 11 would provide an alternative basis for fees, or the dismissal materially alters the legal relationship between the parties, such circumstances exist. *Elks Nat'l Found. v. Weber*, 942 F.2d 1480, 1485 (9th Cir. 1991) (affirming dismissal of § 1983 action for lack of subject matter jurisdiction while also affirming an award of attorney's fees, where fees had been awarded under

42 U.S.C. § 1988, and, alternatively, under Fed. R. Civ. P. 11), *cert. denied*, 505 U.S. 1206 (1992); *cf. Elwood*, 456 F.3d at 948 ("A dismissal based on *Younger* abstention signifies that the court declined to exercise jurisdiction; it makes no comment on the merits of the case, and does not 'materially alter[ ] the legal relationship between the parties.' *Farrar v. Hobby,* 506 U.S. 103, 111 (1992). Therefore, neither [party] prevailed within the meaning of § 1988, and they are not entitled to attorneys' fees.").

In the instant case, the deficiencies in Plaintiff's arguments, both legal and factual, are not subtle; they are numerous and glaring. In fact, albeit in fewer words, the Court dismissed the case for lack of subject matter jurisdiction because Plaintiff's federal claims are "so insubstantial, implausible, foreclosed by prior decisions of [the Supreme Court], or otherwise completely devoid of merit as not to involve a federal controversy." *Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 89 (1998). Plaintiff's state law misrepresentation claims are equally meritless, and they are fully intertwined with her federal claims. Indeed, all of Plaintiff's claims arise from the same facts: She purchased a unit in the Association sight unseen and is dissatisfied because she believed, without any reasonable basis, that the park on the opposite side of her perimeter wall was part of the Association. Plaintiff's failure to make reasonable inquires and avail herself of the information contained in relevant recorded documents prior to her purchase does not constitute misrepresentation in any state, and it certainly does not constitute a civil rights violation.

Each of the three *Miller* factors weighs in favor of an award of fees. First, because Plaintiff's original claims were dismissed on Defendant's responsive pleading, no "after the fact" reasoning is required to demonstrate that the claims were without merit *ab initio*. Second, Plaintiff either recognized or should have recognized, at a very early stage in these proceedings,

that her claims were meritless. By her own admission, she "called 'numerous attorneys; none of which would agree to assist [her] for free or on contingency." (Compl., ECF No. 1, at 17). Moreover, Defendant directed her attention to the incurable defects in her position when it filed its motion to dismiss. (ECF No. 8). Nonetheless, instead of waiting for the Court to decide the merits of her claim, Plaintiff filed eight needless, often lengthy, motions, oppositions, or replies. Each of these filings raised new, but equally baseless claims and implicated new parties in an ever-widening conspiracy to harass the Plaintiff and deprive her of her "civil rights." Plaintiff's complete disregard for the implicated parties, this Court, and the Federal Rules of Civil Procedure is only underscored by her unapologetic, seemingly willful failure to comply with this Court's scheduling Order. (*See* Mot. to Compel, ECF No. 32). Moreover, Plaintiff was unquestionably on notice that her claims lacked merit, at least in this Court, when the Court issued its Order dismissing the case and characterizing the federal claims as "plainly not viable." (ECF No. 38). Undeterred, however, Plaintiff filed five additional motions,  four of which required a response, making baseless attacks on the credibility of this Court, its staff, counsel for Defendants, and various other parties. Therefore, this case, which could not survive a motion to dismiss, needlessly burdened the Defendant with the costs of at least nine responsive filings, shamelessly wasted this Court's resources, and consisted, in large part, of baseless accusations directed at nonparties. If such an action is not "unreasonable, frivolous, meritless, or vexatious," the Court is uncertain what it is. *See Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). Indeed, the Court finds that Plaintiff's conduct exemplifies the "exceptional circumstances" that would  justify a § 1988 award of fees, *Saman*, 173 F.3d at 1157, even under the heightened standard applicable to pro se plaintiffs. *See, e.g.*, *Miller*, 827 F.2d at 620.

Third, and finally, while "subjective bad faith" is not required for an award of fees and costs in this context, *see Hughes*, 449 U.S. at 14, evidence of bad faith weighs towards an award of fees. *Miller*, 827 F.2d at 620 (citing *Christiansburg*, 434 U.S. at 422). In the present case, Plaintiff's causes of action, assertions, and accusations, as contained in the complaint and other filings, are so wholly unsupported by facts and existing law that they raise serious questions regarding her motive in bringing and maintaining this action. Indeed, it appears to the Court that the Plaintiff has attempted to use the process as a punishment. The fact that plaintiff appears pro se is not a license to abuse the process of the Court and to use the Court without restraint as an instrument to harass defendants. Accordingly, the Court finds that the Defendant is entitled to an award of reasonable attorneys' fees under § 1988.

### b.   Federal Rule of Civil Procedure 11

Under Rule 11 of the Federal Rules of Civil Procedure, the Court may impose appropriate sanctions, including attorneys' fees, against any party who files a frivolous action, not reasonably supported by the existing law, or who files an action for an improper purpose, such as to harass another party to the suit. For the reasons already discussed, the Court concludes that Rule 11 provides an alternative basis for an award of Defendant's attorneys' fees.

### c.   Reasonableness of the Requested Award

Defendant seeks an award of $36,568.00 in attorneys' fees and $779.86 in costs. In determining the proper amount of attorneys' fees to assess against a pro se plaintiff under § 1988, the Court must first multiply the number of hours reasonably spent on the case by a reasonable hourly rate, to reach the so-called "lodestar" amount. *Pennsylvania v. Delaware Valley Citizens' Council for Clean Air*, 478 U.S. 546, 564–66 (1986); *Patton v. County of Kings*, 857 F.2d 1379, 1382 (9th Cir. 1988); *Miller*, 827 F.2d 617, 621 (9th Cir. 1987). After making

that computation, the district court then determines whether it is necessary to adjust the presumptively reasonable lodestar figure on the basis of the *Kerr* factors that are not already subsumed in the initial lodestar calculation.[2] *Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996). Finally, in addition to the lodestar amount, the Court must consider the plaintiff's financial resources. *Miller*, 827 F.2d at 621. While "the award should not subject the plaintiff to financial ruin," *id.*, "a district court should not refuse to award attorney's fees to a prevailing defendant under 42 U.S.C. § 1988 . . . solely on the ground of the plaintiff's financial situation," *id.* at 621 n. 5.

Defense Counsel has submitted information regarding its hourly rates: $200.00 for partners, $200.00 for senior associates, and $160.00 for associates. (Mot. for Att'y Fees, ECF No. 46, at 12). Defendant asserts that such rates are similar to rates charged by comparable law firms for similar services. (Aff. Sean L. Anderson, ECF No. 46-3, at 3). Defendant also asserts that, where appropriate, an associate attorney was assigned to handle the day-to-day management of the case, which lowered the per-hour billing significantly. (*Id.*). Moreover, Defendant's

---

[2] The twelve *Kerr* factors bearing on the reasonableness are:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Guild Extras, Inc.*, 526 F.2d 67, 70 (9th Cir.1975). Several of the *Kerr* factors have been supplanted by the "lodestar" approach to attorneys' fees. Factors that cannot serve as independent bases for adjusting fee awards are: (1) the novelty and complexity of the issues; (2) the special skill and experience of counsel; (3) the quality of representation; and (4) the results obtained. *Blum v. Stenson*, 465 U.S. 886, 898–900 (1984); *Jordan v. Multnomah County*, 815 F.2d 1258, 1262 n. 6 (9th Cir.1987).

proposed award of $36,568 apparently assumes a universal $160.00 hourly rate for this case.[3]

Plaintiff does not raise any intelligible objections to this hourly rate, and the Court finds that it is

reasonable, even conservative, for the type of work required.

Defense counsel claims that it has spent a total of 228.9 attorney hours, divided among

three attorneys, defending this case. Defendant asserts that the time and labor required was

largely driven by Plaintiff's unnecessary and burdensome filings, and her complete lack of

cooperation with respect to discovery.(*Id*.). Here again, Plaintiff has not raised any substantive

objections, but the Court concludes that under the circumstances presented in this obviously

frivolous action, the number of hours spent by defense counsel is somewhat excessive.

While the Court readily recognizes that an arguably viable case, with filings in similar

length and number, would easily warrant 228.9 hours of legal work, the frivolous nature of each

of the filings in this case was almost immediately apparent. Indeed, the Court must conclude that

defense counsel could have reasonably (and probably easily) deciphered, contemplated, and

responded to Plaintiff's absurd claims and motions using 65% of the time alleged.[4] Accordingly,

the Court reduces the number of hours claimed by 35% for a rounded total of 148.75.

Multiplying that number by the claimed hourly rate of $160.00, the Court concludes that the

lodestar amount in this case is $23,805.

---

[3] Defense counsel claims to have spent a total of 228.9 hours on this case, which when multiplied by $159.75, equals a total of $36,566.77—a figure just shy of counsel's total requested award.
[4] The Court acknowledges that Defendant, in its response to the Court's order to provide a detailed summary of the hours expended in this case, attempted to amend the instant motion by increasing the number of attorney hours claimed to 274.4. (*See* ECF No. 69). However, Defendants had neither right nor leave to amend the instant motion. Moreover, even if an amendment were proper, it would not change the result. Indeed, the Court finds that defense counsel could have reasonably defended this matter, in its entirety, in 148.75 hours.

Nothing in this case suggests that the *Kerr* factors require a departure from the presumptively reasonable lodestar figure. Therefore, the Court next considers Plaintiff's financial resources.

Plaintiff has submitted nothing that would indicate that she is unable to shoulder the costs of her conduct. Moreover, while she has proceeded without representation, her decision to do so was not financially motivated. Indeed, she has admitted that she did not obtain counsel because she could not find an attorney willing to take her case. (Compl., ECF No. 1, at 17). Furthermore, the Court attempted to inquire about her financial resources at hearing held on December 11, 2013. However, despite the Court's order to appear and show cause, which specifically instructed Plaintiff to prepare to answer questions concerning her financial resources, (ECF No. 65), Plaintiff failed to appear. Instead, she filed a document, which the Court will construe as a motion to continue, the night before the hearing, claiming that she could not attend because she had a "college assignment" due the next day (ECF No. 73, at 1). Therefore, because Plaintiff forfeited her opportunity to present additional evidence concerning her financial circumstances, the Court is left to look to the record. In doing so, it finds that Plaintiff has presented nothing in this case that would even arguably support the conclusion that an assessment of the presumably reasonable lodestar amount would "subject her to financial ruin." *Miller*, 827 F.2d at 621. Accordingly, the Court has considered Plaintiff's financial resources and declines depart from the lodestar amount. Therefore, the Court grants Defendant an award of attorneys' fees in the amount of $23,805. Defendant is also entitled to costs in the amount of $779.86.

### d.  Plaintiff's Remaining Motions

Plaintiff's remaining motions (ECF Nos. 42, 43, 45, 56, 60, and 67) are largely unintelligible, but to the extent that the Court can interpret them, it will construe them as motions

to reconsider. These motions provide no new facts or law relevant to the rationale in the Court's earlier Order; they merely reargue the same issues while leveling baseless accusations against the Defendant, this Court, and various nonparties. Therefore, Plaintiff has failed to establish an adequate basis for reconsideration, and consequently, the motions are denied.

## CONCLUSION

IT IS HEREBY ORDERED that Defendant's Motion for Attorneys' Fees and Costs (ECF No. 46) is GRANTED IN PART.

IT IS FURTHER ORDERED that Defendant is entitled to an award of attorneys' fees in the amount of $23,805 and an award of costs in the amount of $779.86.

IT IS FURTHER ORDERED that Plaintiff's remaining motions (ECF Nos. 42, 43, 45, 56, 60, and 67) are DENIED.

IT IS SO ORDERED.

Dated:   January 6, 2014

_____
ROBERT C. JONES
United States District Judge